IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVE POMPEO,

    Plaintiff,

v.                                  No. 16-cv-1371 MCA/KK

AD ASTRA RECOVERY SERVICES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Ad Astra Recovery Services, Inc.'s Motion to Compel Arbitration and Dismiss Action or Stay Action Pending Completion of Arbitration and Memorandum in Support Filed in Lieu of an Answer* (*Motion*). [Doc. 8] Having considered the submissions, the relevant law, and being otherwise fully informed in the premises, the Court GRANTS the *Motion*, COMPELS arbitration, and STAYS this action.

**BACKGROUND**

Defendant Ad Astra Recovery Services, Inc. is a collection agency contracted to Rapid Cash for collection of delinquent accounts. [Doc. 8-2, ¶¶ 4-5] Plaintiff Steve Pompeo (Plaintiff) allegedly borrowed funds from Rapid Cash in August, 2014. [Doc. 1, pg. 2] Rapid Cash referred the alleged debt to Defendant for collection, and Defendant reported the debt on Plaintiff's credit report. [Doc. 1, pg. 2] Plaintiff disputed the debt by sending a dispute letter to Defendant in September, 2016. [*Id.*] In November, 2016,

1

the debt was still reported on Plaintiff's credit report and did not bear a "disputed by consumer" notice. [*Id.*]

Plaintiff filed suit in December, 2016. [Doc. 1] Plaintiff alleges that Defendant's "debt collection efforts attempted and/or directed towards Plaintiff violate various provisions of the [Fair Debt Collections Practices Act (FDCPA)]." [Doc. 1, pg. 2] *See* 15 U.S.C. § 1692 – 1692p. More specifically, Plaintiff alleges that Defendant reported an alleged consumer debt on Plaintiff's credit report even after it had notice of Plaintiff's dispute of the debt and failed to indicate on the credit report that the debt was disputed. [*Id.* ¶ 12]

Defendant moved to compel arbitration. [Doc. 8] Plaintiff never responded to the *Motion* and Plaintiff's time to respond has lapsed. D.N.M. LR Civ. 7.4(a). Defendant attached to its *Motion* the "Rapid Cash Unsecured High Interest Installment Loan Agreement and Disclosure Statement," (the Agreement) completed and signed by Plaintiff, which states:

> Unless prohibited by applicable law and unless you reject the Arbitration provision in accordance with Section 1 below, you and we agree that either party may elect to require arbitration of any Claim under the following terms and conditions[.]

The terms governing arbitration are set forth in ten paragraphs addressing the right to reject arbitration, arbitration election, waiver, location and costs of arbitration, governing law, survival, and effect of an arbitrator's award, among others. [Doc. 8-2] The Arbitration Provision provides, among other things, the following:

> If a lawsuit is filed, the Defending Party may elect to demand arbitration under this Arbitration Provision of some or all of the Claims asserted in the

2

> lawsuit. . . . A demand to arbitrate a Claim may be given in papers or motions in a lawsuit.

The Agreement also states that

> For purposes of this Agreement, our "related parties" include all parent companies, subsidiaries and affiliates of ours (including Ad Astra Recovery Services, Inc.) and our and their employees, directors, officers, shareholders, governors, managers and members.
>
> The term "Claim" means any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services") . . . . "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third party claims. . . . It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.

[Doc. 8-1, pg. 6-7]

## ANALYSIS

Plaintiff did not file a response to Defendant's *Motion*. "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). Nonetheless, the Court has carefully considered the merits of the motion and is satisfied that it is meritorious. *Cf. Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (holding that, where a party fails to respond to a motion for summary judgment, the party waives the right to respond to or controvert the facts asserted by the moving party but the Court should only grant summary judgment if the uncontroverted facts entitle the moving party to summary judgment).

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2014), to place "arbitration agreements on an equal footing with other contracts, and require[] courts to enforce them according to their terms." *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2013) (internal citations omitted). Under the FAA, this Court must order arbitration if the parties agreed to arbitrate the present dispute. Thus, "a court considering a motion to compel arbitration pursuant to an arbitration agreement need only consider two threshold questions: (1) did the parties agree to arbitrate the dispute at issue? and (2) are there 'legal constraints external to the parties' agreement [that] foreclose[ ] the arbitration of those claims'?" *Morton v. Integrity Motors Inc.*, No. 13-CV-00464-PAB-KMT, 2014 WL 793100, at *2 (D. Colo. Feb. 26, 2014) quoting *Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir. 2000).

As to the first question, "[g]enerally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (stating that state law governing the validity and enforceability of contracts generally may be applied to arbitration agreements under the FAA). "Federal courts apply the choice of law rules of their forum states." *Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1337 (D.N.M. 2009). In New Mexico, the forum here, courts apply the law chosen by the parties in the contract unless that law "run[s] afoul of fundamental New Mexico policy." *Id*. Here, Section 9 of the Arbitration Provision provides that the Provision "is made pursuant to a transaction

4

involving interstate commerce and shall be governed by the FAA . . . provided that the law of Kansas, . . . shall be applicable to the extent that any state law is relevant in determining the enforceability of the Arbitration Provision . . . ." [Doc. 8-2, pg. 8] Hence, under New Mexico choice of law principles, this Court will apply Kansas law unless it offends New Mexico public policy.

Under Kansas law, "[t]hree elements create a contract: offer, acceptance, and consideration. Additionally, in order for parties to form a binding contract, the offer and acceptance must manifest a mutual assent or a 'meeting of the minds' on all the essential terms of the contract." *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1124 (D. Kan. 2015) (internal quotation marks and citation omitted). In addition, "[t]he parties' mutual promises to arbitrate constitute sufficient consideration under Kansas law." *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1224 n.1 (D. Kan. 2007).

Defendant has produced evidence establishing a legally valid and enforceable agreement to arbitrate Plaintiff's dispute. Defendant offered the loan and the Agreement, including the arbitration policy, to Plaintiff, and Plaintiff accepted, thus agreeing to be bound by the Arbitration Provision. [*See* Doc. 8-1] The terms of the contract were set out in the Agreement, which Plaintiff and Rapid Cash, on behalf of its related entities including Defendant, both signed. [Doc. 8-2, pg. 9] Above Plaintiff's signature line is a certification stating that

> [b]y signing below, [Plaintiff] acknowledge[d] and affirm[ed] that: (1) [he] ha[d] received and read a copy of this Agreement; (2) [he] agree[d] to the above terms and the Agreements for Resolving Disputes; (3) there [we]re no blank spaces appearing on this Agreement; (4) [he] underst[ood] the language of this Agreement as it [wa]s presented and [he] w[as] given the

5

opportunity to receive this agreement in Spanish . . . and (5) [he] represent[ed] that, together with any other outstanding High Interest loans [he] ha[d] with [Rapid Cash], the monthly payment(s) d[id] not exceed twenty-five percent of [his] expected monthly gross income.

[Doc. 8-2, pg. 9] The Agreement states that the Arbitration Provision "sets forth when and how claims . . . will be arbitrated instead of litigated in court" and that "if you don't reject this Arbitration Provision in accordance with Section 1 . . . it will have a substantial impact on the way in which you or we resolve any claim." [Doc. 8-1, pg. 7] Moreover, the Agreement defines "claim" very broadly, stating that "'[c]laim' is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third party claims. . . . It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief." [Doc. 8-1, pg. 6-7] Finally, the Arbitration Provision requires both parties to agree to arbitrate disputes, and Plaintiff agreed to pay interest in return for the loan. [*Id.*; Doc. 8, pg. 9] Thus, there was consideration for both the Agreement and the Arbitration Provision. *Clutts*, 484 F. Supp. Ed. at 1224 n.1.

As Plaintiff did not respond to Defendant's *Motion*, Plaintiff has offered no argument or evidence to contradict the validity or enforceability of these agreements, nor does he argue that his claim is outside the definition of "claim" in the Agreement. The Court finds that Defendant has established that the parties agreed to settle this dispute through arbitration. *See Imhoff*, 203 F.3d at 764 (stating that courts must first "determine

whether the parties agreed to arbitrate the . . . claims at issue" (internal quotation marks, alterations, and citations omitted).

As to the second question, the Arbitration Provision is not, on its face, faulty because it is illusory, unconscionable, or otherwise invalid. [Doc. 8] *See, e.g., Barnes v. Securitas Sec. Sys. USA, Inc.*, No. 05-2264-JWL, 2006 WL 42233, at *3 (D. Kan. Jan. 6, 2006) (stating "that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory" (internal quotation marks and citation omitted)); *Wilson v. Mike Steven Motors, Inc.*, 111 P.3d 1076 (Kan. Ct. App. 2005) (discussing factors for determining whether an arbitration agreement is unconscionable); *Imhoff*, 203 F.3d at 764 (stating that courts must determine "whether legal constraints external to the parties' agreement foreclose the arbitration of those claims.").

Because the arbitration agreement in this case is legally enforceable, the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 954-55 (10th Cir. 1994) (holding that it was error, under the plain language of the FAA, to dismiss an action and order arbitration where the moving party moved for a stay of the action).

**CONCLUSION**

**WHEREFORE, IT IS THEREFORE HEREBY ORDERED** that:

1) *Defendant Ad Astra Recovery Services, Inc.'s Motion to Compel Arbitration and Dismiss Action or Stay Action Pending Completion of Arbitration* is **GRANTED;**

2) The parties to proceed with arbitration as agreed to in Defendant's Arbitration Provision;

3) This matter is **STAYED** pending arbitration;

4) The parties file a Joint Status Report on the status of the arbitration three (3) months from the date of this Order and every three (3) months thereafter.

**SO ORDERED** this 22nd day of June, 2017 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court